UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 18-cv-61991-BLOOM/Valle

SECURITIES AND EXCHANGE COMMISSION,

   Plaintiff,
v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

   Defendants, and

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH, LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

   Relief Defendants.
_____/

**OMNIBUS ORDER ON MOTION FOR COMFORT ORDER CONFIRMING TERMINATION OF BANKING AGREEMENTS AND RECEIVER'S MOTION TO APPROVE BRIGHT SMILE ASSET SALE AND PURCHASE AGREEMENT**

**THIS CAUSE** is before the Court upon Western Alliance Bank's ("WAB") Motion for Comfort Order Confirming Termination of Banking Agreements, ECF No. [77] ("Motion for Comfort Order"), and Receiver's Motion to Approve Bright Smile Asset Sale and Purchase Agreement, ECF No. [132] ("Motion to Approve Sale") (collectively, "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion for Comfort Order is granted in part and denied in part, and the Motion to Approve Sale is granted.

## I. BACKGROUND

Plaintiff Securities and Exchange Commission ("SEC") initiated this action on August 23, 2018, against Defendants Carl Ruderman and 1 Global Capital for violations of the Securities Act and Exchange Act, naming as Relief Defendants 1 West Capital LLC, Bright Smile Financing, LLC ("Bright Smile"), BRR Block Inc., Digi South, LLC, Ganador Enterprises, LLC, Media Pay LLC, Pay Now Direct LLC, and the Ruderman Family Trust. According to the SEC's Amended Complaint, Defendants engaged in a four-year long unregistered securities fraud totaling more than $287 million, victimizing thousands of investors nationwide. The SEC seeks, among other relief, permanent injunctive relief, civil penalties, and disgorgement.

On August 23, 2018, the SEC requested an asset freeze and the appointment of a receiver over Relief Defendants Bright Smile, BRR Block, Inc., Digi South, LLC, Ganador Enterprises LLC, Media Pay LLC, and Pay Now Direct, LLC. ECF Nos. [6] and [7]. The Court entered a sealed order appointing Jon A. Sale, Esq. as Receiver for the Receivership Entities. ECF No. [12]. The Court also entered an order freezing Defendants' assets. ECF No. [13] ("Freeze Order"). The Receiver is obligated to take immediate possession of the property and assets of the Receivership Entities, to investigate the manner in which the affairs of the Receivership Entities were conducted, and to institute actions and proceedings for the benefit of investors and other creditors. ECF No. [12] ¶¶ 1, 2.

Bright Smile was in the business of making small short-term loans to consumers to finance dental and cosmetic procedures. 1 Global provided over $15 million in funding to Bright Smile. Between January, 2018 and July, 2018, Bright Smile opened and maintained two business checking accounts and a business money market account at WAB. These accounts are governed by the terms and conditions set forth in a certain written "Treasury Management Services

Agreement and Service Descriptions," revised October 2016 (the "Treasury Management Services Agreement") and a certain written "Deposit Account Agreement and Disclosure," revised October 2016 (the "DAAD," and collectively, the "Banking Agreements") by and between Bright Smile and WAB. ECF No. [77-1] ¶ 4, Exs. A and B. The Treasury Management Services Agreement provides that WAB "may terminate, suspend or restrict some or all of [Bright Smile]'s access to the Services under the Agreement, with or without cause, at any time immediately upon notice to [Bright Smile]." *Id.*, Ex. A, p. 8, § 20.

WAB accepts ACH Prearranged Payment and Deposit ("ACH") transactions for Bright Smile to collect automatic debits from consumer bank accounts. For a 90-day period after an ACH transaction, WAB may be required to return funds to a consumer as an ACH chargeback. The Operating Rules of NACHA (formerly known as the National Automated Clearing House Association) define the roles and responsibilities of financial institutions and establish the guidelines by which every participant in the ACH network must comply. NACHA's rules set forth ACH return thresholds. Non-compliance with NACHA Rules subject any ACH network participant to jeopardy of sanctions.

On August 6, 2018, WAB informed Bright Smile of its desire to terminate the banking relationship, citing Bright Smile's violations of the NACHA Operating Rules. On September 18, 2018, the Receiver issued a subpoena to WAB for documents and information necessary to understand the relationship between Bright Smile and WAB. On September 20, 2018, WAB delivered written notice of its termination of the Banking Agreements, with an effective date of 30 days after the date of notice. WAB filed the Motion for Comfort Order on September 21, 2018, seeking acknowledgment of WAB's right to terminate its banking relationship with Bright Smile. The Court granted an extension of time for the Receiver to respond to the Termination Motion

after WAB certified that it produced all documents responsive to the subpoena. ECF No. [84]. The Receiver filed its Response to the Motion for Comfort Order on January 29, 2019. ECF No. [141].

In January 2019, Bright Smile was approved by a new ACH processor. The Receiver's Response to the Motion for Comfort Order represents that Bright Smile will transfer its ACH processing out of WAB by February 28, 2019. ECF No. [141] at 8. In turn, WAB's Reply requests that the Court permit WAB to cease providing its ACH processing not later than February 28, 2019. ECF No. [153] at 2. WAB is presently holding approximately $3,000,000.00 of Bright Smile's cash ("ACH Collateral") in a business money market account as collateral for Bright Smile's liabilities to WAB. The Receiver and WAB agree that WAB may maintain a collateral hold on the approximately $3,000,000.00 ACH Collateral for 90 days after the transfer of the ACH processing is complete. ECF No. [141] at 9; ECF No. [153] at 5.

On September 25, 2018, the Receiver and Bright Smile's current president, John Snead, agreed to the material terms for the purchase of Bright Smile's assets. Bright Smile's primary asset is its loan portfolio, which consists of approximately 3,000 consumer loans generally made to subprime borrowers. On January 21, 2019, the Receiver filed the Motion to Approve Sale requesting that the Court approve the proposed transaction ("Proposed Sale," as amended by the First Amendment to Asset Purchase and Sale Agreement, "Agreement" or the "Bright Smile Asset Sale and Purchase Agreement"), by which the Receiver would sell certain specified assets of Bright Smile to Wellness Care Credit, LLC ("Asset Buyer") and Bright Smile Collections, LLC ("Account Buyer," and together with the Asset Buyer, "Buyers"), which are entities related to and controlled by John Snead. The terms of the proposed Sale are set out in the Agreement, attached

to the Motion to Approve Sale as Exhibit 1. ECF No. [132-1]. The Proposed Sale, upon completion of its terms, provides for a $3 million recovery to the Receivership.

The Receiver's professionals estimate that a wind down of the portfolio would result in a recovery range from $2,000,000.00 to $4,200,000.00, including the direct cost of collection but not including administrative costs to oversee and monitor the wind down. The Receiver's professionals determined that a sale of Bright Smile's assets at a fair purchase price is preferable to a wind down of the loan portfolio overseen by the Receiver.

WAB filed the only objection to the Motion to Approve Sale. WAB states that it generally does not oppose the proposed transaction but asserts several concerns, namely, that the purchase agreement "purports to force [WAB] to continue providing its ACH processing services for an unspecified period of time" and "appears to provide for the assumption and assignment of WAB's Banking Agreements with Bright Smile to Buyers." ECF No. [151] at 2. WAB also requests that any order granting the Motion to Approve Sale provide for the retention of not less than $250,000.00 in Bright Smile's operating account ("Operating Account") to apply toward losses WAB suffers due to consumer ACH chargebacks, that the Court permit WAB to access its approximately $3,000,000.00 ACH Collateral in the event that the $250,000.00 is insufficient to reimburse WAB for substantiated ACH chargebacks.

The Receiver's Sur-Reply to Bridge Bank's Reply in Support of Motion for Comfort Order Confirming Termination of Banking Agreements represents that the Buyer has agreed "to cover chargebacks post-closing by funding the operating account with $75,000.00 and replenish[] it any time the balance drops below $25,000.00." ECF No. [158] at 9. On February 15, 2019, the Court Ordered the Receiver to submit to the Court the specific terms and structure of the Buyers' agreement to fund Bright Smile's Operating Account and "reserved ruling on the pending Motions

until such time as the Receiver submits to the Court further confirmation by the Buyers of the Buyers' agreement to fund Bright Smile's operating account." ECF No. [160] at 2. On February 19, 2019 the Receiver timely filed the First Amendment to Asset Purchase and Sale Agreement ("First Amendment"). ECF No. [161-1]. The First Amendment provides that the Buyers shall leave $75,000.00 in the Operating Account for 90 days after the transfer of the ACH processing is complete to be used only for satisfying ACH chargebacks. *Id.* ¶ 1(g). If at any time during such 90-day period, the amount in the Operating Account designated for reimbursing chargebacks drops below $25,000.00, then Buyers must increase the amount by an additional $25,000.00 *Id.* The First Amendment is signed by the Receiver and the Buyers.

## II. DISCUSSION

The Receiver and WAB have appeared to arrive at agreements on several of the conditions to terminate the banking relationship between Bright Smile and WAB. However, disputes remain as to the amount of funds that WAB shall retain post-termination and the process by which WAB may seek to access those funds as reimbursement for both consumer chargebacks and any claimed attorneys' fees. WAB, in support of its position, relies on the principle that a receiver acquires no greater rights in property than the debtor had; or, put another way, a receiver stands in the shoes of the entity in receivership. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). WAB contends that the Banking Agreements, which set forth the terms and conditions for WAB's agreement to provide ACH and other services to Bright Smile, is binding on the Receiver. The Receiver, in support of its position, relies on the principle that district courts have broad power and wide discretion in determining relief in an equity receivership. *SEC v. Elliott*, 953 F. 2d 1560, 1566 (11th Cir. 1992). With those two principles in mind, the Court holds that the termination of

Bright Smile's ACH processing by WAB and the sale of Bright Smile's assets shall occur as set forth below.

### A. Termination of ACH Processing Services

First, as agreed to by the Receiver and WAB, Bright Smile must transfer its ACH processing out of WAB by February 28, 2019. WAB must continue providing its ACH processing to Bright Smile until the earlier of the date Bright Smile transfers its ACH processing out of WAB or February 28, 2019. Additionally, WAB may continue to hold the approximately $3,000,000.00 ACH Collateral for 90 days after transfer of the ACH processing is complete.

Second, WAB may withdraw funds from the Operating Account as reimbursement for Bright Smile's consumer chargebacks for 90 days following termination of WAB's ACH processing. To the extent that the funds in the Operating Account are insufficient to fully reimburse WAB for consumer chargebacks during the 90-day period following termination of WAB's ACH processing, funds in the amount of $500,000.00[1] of the approximately $3,000,000.00 ACH Collateral are unfrozen for the sole purpose of reimbursing WAB for said consumer chargebacks. At the end of the 90-day period following termination of WAB's ACH processing, WAB may draw from the $500,000.00 of unfrozen ACH Collateral to cover any deficiency in reimbursing chargebacks. WAB must provide an accounting to the Receiver of any chargebacks for which it seeks reimbursement from the $500,000.00 of unfrozen ACH Collateral but need not seek further Court approval for such reimbursement. The Receiver shall ensure that all chargebacks are properly reimbursed to WAB, even after the 90-day period has expired.

---

[1] As explained by the Receiver, during the 90-day period preceding August 31, 2018, Bright Smile processed $1,999,456.61 of consumer funds. The recent historical reversal rate on ACH transfers is approximately 21 percent. Based on these figures provided by the Receiver, during a 90-day period WAB may incur approximately $419,886.89 in chargebacks.

Should the funds in the Operating Account and the $500,000.00 of unfrozen ACH Collateral be insufficient to fully reimburse WAB for consumer chargebacks during the 90-day period following termination of WAB's ACH processing, WAB may seek further relief from the Freeze Order by submission of affidavit to the Court to offset any of the remaining approximately $2,500,000.00 in ACH Collateral for the sole purpose of reimbursing WAB for consumer chargebacks.[2]

Third, to the extent that WAB seeks attorneys' fees, it may do so by motion to the Court, providing the legal basis for its claim to attorneys' fees, including citation to the provision(s) of the Banking Agreements that permits attorneys' fees and a demonstration of reasonableness of said fees.[3]

### B. Bright Smile Asset Sale and Purchase Agreement

The Court has jurisdiction over this matter pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa. The form and means of the notice of the Proposed Sale and the Motion to Approve Sale are determined to have been the best notice practicable under the circumstances and to be good and sufficient notice to all persons whose interests could be affected by this Order. The Court has been apprised of the negotiations that preceded the Agreement and finds that the Proposed Sale is a result of arms-length bargaining

---

[2] Should the Bright Smile Asset Sale and Purchase Agreement fail to be consummated on or before February 28, 2019, funds in the amount of $500,000.00 of the approximately $3,000,000.00 ACH Collateral shall immediately become unfrozen for the sole purpose of reimbursing WAB for said consumer chargebacks. To the extent that these funds are insufficient to fully reimburse WAB for consumer chargebacks, WAB may seek further relief from the Freeze Order as set forth in this paragraph.

[3] By explicitly raising the issue of attorneys' fees in its Reply in Support of Motion for Comfort Order but not the Motion for Comfort Order WAB did not waive its right to seek attorneys' fees. WAB may seek attorneys' fees by separate motion.

among the Parties. There is no evidence that the Proposed Sale is the result of collusion among the Parties or that there has been an intent to prejudice the persons who, or the entities which, will be subject to this Order. The legal and factual bases set forth in the Motion to Approve Sale establish that the Agreement represents a fair, reasonable, and adequate consideration for the Purchased Assets. The Court finds that the Proposed Sale including, but not limited to, the release by Bright Smile and the Receiver in favor of Buyers, attached to the Agreement as Exhibit J, is a condition precedent to the consummation of the Agreement and, accordingly, is fair and equitable with respect to creditors in this receivership case, and is in the best interest of this receivership estate. The terms of the Agreement, together with all its attached schedules and exhibits, are approved and incorporated into this Order. This Court retains jurisdiction (a) to enforce the terms of the Agreement; and (b) enforce the terms of this Order.

### III. CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. WAB's Motion for Comfort Order, **ECF No. [77],** is **GRANTED in part and DENIED in part**.
2. The Receiver's Motion to Approve Bright Smile Asset Sale and Purchase Agreement, **ECF No. [132]**, is **GRANTED**.
3. Bright Smile must transfer its ACH processing out of WAB by **February 28, 2019**.
4. WAB must continue providing its ACH processing to Bright Smile until the earlier of the date Bright Smile transfers its ACH processing out of WAB or **February 28, 2019**.
5. WAB may continue to hold the approximately $3,000,000.00 ACH Collateral for 90 days after Bright Smile transfers its ACH processing out of WAB.

6. WAB may draw from funds in Bright Smile's Operating Account for 90 days after Bright Smile transfers its ACH processing out of WAB to cover Bright Smile consumer chargebacks.

7. At the end of the 90-day period following termination of WAB's ACH processing, WAB may draw from the $500,000.00 of unfrozen ACH Collateral to cover any deficiency in reimbursing chargebacks. WAB must provide an accounting to the Receiver of any chargebacks for which it seeks reimbursement from the $500,000.00 of unfrozen ACH Collateral but need not seek further Court approval for such reimbursement.

8. To the extent that the funds in the Operating Account and the $500,000.00 of unfrozen ACH Collateral are insufficient to fully reimburse WAB for consumer chargebacks during the 90-day period following termination of WAB's ACH processing, WAB may seek further relief from the Freeze Order by submission of affidavit to the Court to offset any of the remaining approximately $2,500,000.00 in ACH Collateral for the sole purpose of reimbursing WAB for consumer chargebacks

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of February, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record