UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-cv-61991-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

    Defendants, and

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

    Relief Defendants.

**WESTERN ALLIANCE BANK'S VERIFIED MOTION TO
OFFSET CASH COLLATERAL TO RECOVER
ITS ATTORNEYS' FEES AND COSTS
AND INCORPORATED MEMORANDUM OF LAW**

    Western Alliance Bank, an Arizona banking corporation, successor in interest to Bridge Bank, National Corporation ("WAB" or "Bank"), pursuant to Southern District of Florida Local Rule 7.3, respectfully moves for an Order authorizing WAB to offset its cash collateral pursuant to its contractual rights to recover a total of **$303,656.07**[1] in attorneys' fees and costs incurred in the above-captioned action. Additionally, and consequently, WAB also seeks an order modifying this Court's Freeze Order as necessary to permit the requested offset. In support thereof, WAB respectfully represents:

---

[1] This figure includes the Bank's fees and costs associated with this Motion, including estimated amounts for replying to opposition and appearing at an evidentiary hearing, as explained in greater detail in Section III.D below.

853\3229381.7

## INTRODUCTION

WAB's pre-Receivership contracts with Bright Smile (collectively the "Banking Agreements") provide for the right to offset Bright Smile's funds for all liability or debt owed by Bright Smile to the Bank. Specifically, those Banking Agreements expressly provide for such setoff to pay for the Bank's attorneys' fees, costs and expenses incurred in enforcing its contract rights without prior notice and against any and all accounts of Bright Smile has at the Bank. At the same time, WAB respectfully acknowledges that its setoff right under the Banking Agreements is subject to the Freeze Order [ECF No. 13] entered by the Court on or about August 23, 2018 in this proceeding.

In making this motion ("Motion"), WAB observes that the Court expressly acknowledged WAB's right to seek its attorneys' fees to which it can demonstrate it is entitled under the Banking Agreements by motion to the Court. [*See* ECF No. 162, p. 8, at fn. 3.] Following meet and confer efforts by WAB's counsel, the Receiver, through his counsel, disputes the Bank's right to recover its attorneys' fees and costs under the Banking Agreements and challenges the amount sought for recovery. The Bank's entitlement to its fees is resolved, however, by the face of the parties' contracts. Applicable common law doctrine provides additional, independent, support. It is ironic, meanwhile, that the Receiver would dispute the amount sought where the Receiver's counsel's aggressive actions against the Bank triggered the bulk of WAB's expenditure of attorneys' fees in this case.

WAB respectfully requests, therefore, that the Court enter an Order permitting the Bank to offset its remaining cash collateral in the Accounts (as defined below) to pay off Bright Smile's obligation to WAB in the amount of $303,656.07 for the Bank's fees and costs incurred in this matter. The Bank also seeks relief from the Court's Freeze Order solely as necessary to perform the Court-approved offset. Finally, in the interests of equity, pending the ruling on this Motion, WAB requests that the Freeze Order remain in effect with respect to the ACH Collateral, at least for the amount sought for reimbursement here.

## RELEVANT FACTUAL BACKGROUND

The description of WAB's banking relationship with Bright Smile has been the subject of multiple filings with the Court in this action, most recently in its *Motion for Comfort Order Confirming Termination of Banking Agreements* ("Motion for Comfort Order") [ECF No. 77] filed on or about September 21, 2018. Instead of repeating that description here, the Bank will summarize the most salient aspects now.

Between January, 2018 and July, 2018, Bright Smile opened and maintained three (3) accounts at WAB: (i) a Business Checking account ending in 1343, (ii) a Business Checking account ending in 3270, and (iii) a Business Money Market account ending in 5484 (collectively, the "Accounts"). (Edwards Decl., ¶ 2.) (**Exhibit A**). The Accounts are governed by the terms and conditions set forth in, among other related agreements, (i) a certain written "Deposit Account Agreement and Disclosure," revised October 2016 (the "Deposit Account Agreement"), and (ii) a certain written "Treasury Management Services Agreement and Service Descriptions," revised October 2016 (the "Treasury Management Services Agreement," and collectively with the Deposit Account Agreement, the "Banking Agreements") by and between Bright Smile and the Bank. (*Id.*, ¶ 3, Exs. A and B.) As unambiguously stated in the Deposit Account Agreement, "[T]his … is the contract that governs [Bright Smile]'s deposit accounts held at Bank." (*Id.*, Ex. A, p. 1.)

By maintaining the Accounts at WAB and availing itself of the Bank's deposit and automated clearing house ("ACH") processing services, Bright Smile agreed to the terms and conditions for the Bank's provision of such services as set forth in the Banking Agreements. (Edwards Decl., ¶ 4.) Those Banking Agreements expressly provide, among other things, that:

- Each Account holder promises to pay, upon demand, any and all debit balances, fees and charges, **reasonable attorneys' fees and costs and expenses of collection**. (*see* Edwards Decl. ¶ 5, Ex. A, pp. 4-5, "Deposit Accounts");

- **Bright Smile grants WAB a security interest in all Accounts** other than fiduciary accounts maintained for the benefit of others **to secure the repayment of any overdraft or obligation that Bright Smile incurs under the Banking** Agreements (*Id.*, Ex. B, p. 5, §10, "Security Interest");

- Subject to applicable law, **the Bank may exercise its right of setoff or security interest against any and all of Bright Smile's Accounts held at WAB** (except

>   IRA, Keogh and certain fiduciary accounts) **without notice, for any liability or debt of Bright Smile, whether direct or contingent.** (*Id.*, Ex. A, p. 15, "Right of Setoff");
>
> - Bright Smile agreed to be liable to Bank, to the extent permitted by law, for any loss, costs, or expenses (**including attorneys' fees**) **that WAB may incur as a result of any dispute or legal proceeding involving Bright Smile's Accounts**. In fact, **Bright Smile "authorize[d] [WAB] to deduct any such loss, costs, or expenses from [the] Account[s] without prior notice" to Bright Smile**. (*Id.*, Ex. A, p. 20, "Miscellaneous Provisions") (Emphasis supplied); and,
>
> - **No party's delay in exercising any right or remedy under the Banking Agreements will operate as a waiver of such right or remedy**, or preclude the exercise of any right upon a party's prior, current, or subsequent breach. (*Id.*, Ex. B, p. 9, § 26, "Waiver").

Pursuant to the *Omnibus Order on Motion for Comfort Order Confirming Termination of Banking Agreements and Receiver's Motion to Approve Bright Smile Asset Sale and Purchase Agreement* ["Omnibus Order," ECF No. 162], Bright Smile transferred its ACH processing out of the Bank on February 22, 2019. As provided by the Omnibus Order, WAB may continue to hold the approximately $3,000,000.00 in cash collateral ("ACH Collateral") for 90 days thereafter, or until May 23, 2019.

WAB's ACH Collateral funds are currently held in Bright Smile account ending in 5484. Further to the Freeze Order in place, WAB confirms that it has taken no action to setoff or otherwise assert control over these funds of the Receivership Estate. (Edwards Decl., ¶ 6.)

## MEMORANDUM OF LAW

### I.   WAB IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS INCURRED UNDER THE BANKING AGREEMENTS

Upon his August 23, 2018 appointment (*see* ECF No. 12), the Receiver stepped into the shoes of Bright Smile and therefore is bound by the Banking Agreements. As a result, the express language of the Banking Agreements that sets forth the terms and conditions for WAB's agreement to provide ACH and other services to Bright Smile is binding on the Receiver and the Receivership estate—including the many provisions set forth above authorizing WAB's recovery of its attorneys' fees and costs.

The general rule is that a receiver acquires no greater rights in property than the debtor had;

or, put another way, a receiver stands in the shoes of the entity in receivership. *See, e.g., Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009); *see also Trigo v. FDIC*, 847 F.2d 1499, 1501-02 (11th Cir. 1988) (under Florida law, a receiver steps into the shoes of, and has no rights separate from, the represented entity). Furthermore, since the receiver takes control and possession of property of the corporation for whom he serves as a receiver, "any defense which would have been good against the former may be asserted against the latter." *In re Glob. Grounds Greenery, LLC*, 405 B.R. 659, 666-67 (Bankr. D. Ariz. 2009).

Under this law, the Receiver has the exact same rights that Bright Smile had as of his appointment. As a result, the express language of the Banking Agreements providing for the Bank's recovery of its attorneys' fees and costs binds the Receiver and the Receivership estate. The provisions quoted above, therefore, establish the Bank's contractual entitlement to recover its fees and costs now.

The common law doctrine of the State of Arizona, which governs the Banking Agreements, further supports this result. The Arizona Revised Statutes expressly acknowledge "the banker's general common law lien or right of setoff against indebtedness owing in deposit accounts." *See* AZ ST § 47-4210, Uniform Commercial Code Comment No. 1. Arizona law also permits the Bank to recover it fees incurred with respect to the instant Motion and any related litigation. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings LLC*, No. CV-16-04536-PHX-DJH, 2019 U.S. Dist. LEXIS 18082, at *16, (D. Ariz. Feb. 5, 2019) ("Recoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees ('fees-on-fees').") (quoting *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995)); *Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119-PHX-JAT, 2016 U.S. Dist. LEXIS 128806, at *43 n.12 (D. Ariz. Sep. 21, 2016) ("The amount Defendants have requested also includes reasonable attorneys' fees incurred in prosecuting this fee request. Under Arizona law, reasonable attorneys' fees incurred in preparing the fee application are recoverable.") (internal quotation marks and citation omitted). Thus, both the Banking Agreements and the applicable common law doctrines support the Bank's recovery of its fees and

costs in this proceeding.

### III.   INFORMATION REQUIRED BY LOCAL RULE 7.3

Under Local Rule 7.3, WAB provides the following required information:

#### A.   Timing and Basis for Award of Attorneys' Fees and Costs

WAB filed this Motion well in advance of May 23, 2019, the 90th day following the date that Bright Smile transferred its ACH processing out of the Bank (or February 22, 2019). As such, the Bank still holds the ACH Collateral against which it seeks to exercise its setoff right. WAB is entitled to recover its attorneys' fees under the Banking Agreements and applicable common law doctrine detailed above, as well as Southern District of Florida Local Rule 7.3.

#### B.   Amount of Fees and Costs

WAB enlisted the assistance of three law firms in this matter: its long-time counsel in San Jose, Hopkins & Carley; the Tabas & Soloff firm with whom the Bank and Hopkins & Carley had worked with on other matters; and the White & Case law firm, whom was brought in after Tabas & Soloff determined it could no longer assist the Bank in this matter.

The total amount of attorneys' fees and costs for all work performed by local counsel Tabas & Soloff on the Bank's behalf in this action is $11,606.88.

The total amount of attorneys' fees and costs for all work performed by local counsel White & Case, LLP on the Bank's behalf in this action is $84,525.00.

The total amount of attorneys' fees and costs for all work performed by California counsel, the law firm of Hopkins & Carley, ALC, on the Bank's behalf in this action is $207,524.19.

Accordingly, the Bank seeks a total award of $303,656.07 for its fees and costs incurred under the Banking Agreements.

Because WAB was unable to resolve this Motion with the Receiver without court intervention, WAB submits as **Exhibit B** the Declaration of Sean Santini, Esq. relating to the reasonableness of the Bank's fee request.

#### C.   Terms of Applicable Fee Agreement

Tabas & Soloff, White & Case, LLP and Hopkins & Carley, ALC (collectively, the

"Firms," and individually, a "Firm") each bills WAB for the time spent by each firm's attorneys and legal professionals at specified hourly rates. Each Firm submits invoices for its services and, in each case, those invoices are due upon receipt. (Edwards Decl., at ¶ 7.)

### D. Description of Timekeepers and Tasks

The table below provides the following information for each Firm's services to the Bank in this action: (1) the identity of each timekeeper for whom the Bank now seeks fees; (2) the number of hours expended by each timekeeper; and (3) each timekeeper's hourly rate:

**Tabas & Soloff**

| TIMEKEEPER | HOURS | 2018 RATE | FEES |
|---|---|---|---|
| Joshua D. Silver | .60 | $350.00 | $ 210.00 |
| Joel L. Tabas | 11.70 | $625.00 | $ 7,312.50 |
| Michael K. Northrop | 2.20 | $500.00 | $ 1,100.00 |
| Stacey F. Soloff | 6.00 | $450.00 | $ 2,700.00 |
| | 20.50 | TOTAL FEES | $11,322.50 |
| | | TOTAL COSTS | $ 284.38 |
| | | TOTAL SOUGHT | $11,606.88 |

**White & Case**

| TIMEKEEPER | HOURS | 2018 RATE | FEES |
|---|---|---|---|
| James N. Robinson | 43.80 | $755.00 | $ 33,069.00 |
| Mahalia Cole | 40.60 | $475.00 | $ 19,285.00 |
| Dalgys Estrabao | 1.20 | $185.00 | $ 222.00 |
| | 85.60 | | $ 52,576.00 |
| | | 2019 RATE | FEES |
| James N. Robinson | 12.10 | $815.00 | $ 9,861.50 |
| Mahalia Cole | 8.40 | $565.00 | $ 4,746.00 |
| Dalgys Estrabao | .20 | $220.00 | $ 44.00 |
| M. Rivera | .10 | $225.00 | $ 22.50 |
| | 20.80 | | $ 14,674.00 |
| MARCH AND APRIL FEES AND EST. FOR REPLY AND HEARING ON THIS MOTION | 25.00 | | $ 17,125.00 |

| | | | |
|---|---|---|---|
| **TOTAL HOURS** | 131.40 | | |
| **TOTAL FEES** | | | $ 84,375.00 |
| **TOTAL COSTS** | | | $ 150.00 |
| **TOTAL SOUGHT** | | | $ 84,525.00 |

**Hopkins & Carley**

| TIMEKEEPER | HOURS | 2018 RATE | FEES |
|---|---|---|---|
| Stephen J. Kottmeier | 1.90 | $508.50 | $ 966.15 |
| Jay M. Ross | 40.80 | $504.00 | $ 20,563.20 |
| Monique Jewett-Brewster | 156.80 | $382.50 | $ 59,976.00 |
| Mariellen S. Facchino | 33.60 | $265.50 | $ 8,920.80 |
| Neelam Nandra | 8.00 | $121.50 | $ 972.00 |
| | 241.10 | | $ 91,398.15 |
| | | **2019 RATE** | **FEES** |
| Jay M. Ross | 22.70 | $535.50 | $ 12,155.85 |
| Monique Jewett-Brewster | 89.70 | $445.50 | $ 39,961.35 |
| Mariellen S. Facchino | 29.00 | $292.50 | $ 8,482.50 |
| Neelam Nandra | .20 | $126.00 | $ 25.20 |
| Jeffrey Catancio | 10.60 | $292.50 | $ 3,100.50 |
| Danny Zepeda | 1.90 | $247.50 | $ 470.25 |
| | 155.30 | | $ 64,730.25 |
| **TOTAL HOURS** | 396.40 | | |
| **TOTAL FEES** | | | $ 155,593.80 |
| **TOTAL COSTS** | | | $ 91.24[2] |
| **TOTAL THROUGH FEBRUARY 2019** | | | $ 155,685.04 |
| **MARCH 2019 (EST.)** | | | $ 21,850.65 |
| **EST. HEARING FEES (Including Attorney Fees, Expert Preparation, and Roundtrip Travel)** | | | $ 29,984.00 |
| **TOTAL REQUESTED** | | | $ 207,524.19 |

Biographical information explaining each Tabas & Soloff timekeeper's experience and qualifications is attached as Composite **Exhibit C**. Biographical information explaining each

---

[2] Excluded from this amount are costs totaling $922.64 for flight and hotel expenses associated with the hearing on the Receiver's Motion for an Emergency Order to Show Cause for Contempt against the Bank.

White & Case timekeeper's experience and qualifications is attached as Composite **Exhibit D**. Biographical information explaining each Hopkins & Carley timekeeper's experience and qualifications is attached as Composite **Exhibit E**.

### E. Invoices

Descriptions of the tasks performed by Tabas & Soloff in connection with this action are provided in Tabas & Soloff's invoices, attached as **Exhibit F**. Descriptions of the tasks performed by White & Case in connection with this action are provided in White & Case's invoices, attached as **Exhibit G**. Descriptions of the tasks performed by Hopkins & Carley in connection with this action are provided in Hopkins & Carley's invoices, attached as **Exhibit H**. The Firms have redacted only those entries necessary to preserve privilege and reflecting time for which the Bank does not seek a recovery.

### F. Verification

This Motion has been verified below by Lori Edwards, Executive Vice President, Special Assets Group, at WAB, to whom the bills were rendered.

### G. Certification of Conference / WAB's Compliance With Local Rule 7.3

After serving a draft of this Motion on April 5, 2019 as required by Local Rule 7.3 (**Exhibit I**), the undersigned, James N. Robinson, Esq., on April 19, 2019 conferred in person with Gary Freedman, Esq., counsel for the Receiver, and again by telephone on April 26, 2019. Despite the parties' good faith efforts, the parties were unable to reach any agreement. As will be set forth in the Receiver's Response, the Receiver is taking the position, among others, that the Banking Agreements are not enforceable and that the Bank is not entitled to recover its fees in this matter.

### CONCLUSION

The Banking Agreements and applicable common law doctrine grant WAB the express right to offset the ACH Collateral in the Accounts to recover its attorneys' fees and costs incurred in this proceeding in the total amount of $303,656.07. Pursuant to Local Rule 7.3, the Court should grant this motion and enter an Order (i) awarding WAB its attorneys' fees and costs in the amount of $303,656.07, and (ii) giving WAB relief from this Court's Freeze Order for the express purpose

of effecting its offset of the cash collateral. Finally, to preserve WAB's rights in the ACH Collateral, WAB respectfully requests that the Freeze Order remain in full force and effect with respect to the ACH Collateral at least in the amount sought herein until the Court rules on this Motion.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1, WAB respectfully requests that the Court schedule a hearing on this Motion. WAB believes a hearing would be helpful to the Court to hear testimony regarding the amount of time expended by the Bank in this case as a direct result of actions undertaken by the Receiver, which the Bank respectfully submits were excessive and which contributed to the majority of the fees requested here. WAB estimates the time necessary for a hearing on this Motion – which WAB expects would include testimony from expert witnesses – to be between one half-day and one full day.

Dated:  April 29, 2019

Respectfully Submitted,

By:/s/ *Monique D. Jewett-Brewster*
   Monique D. Jewett-Brewster
   California Bar No. 217792
   HOPKINS & CARLEY
   70 S. First St.
   San Jose, CA 95113
   Telephone: (408) 286-9800
   Facsimile: (408) 998-4790
   Email: mjb@hopkinscarley.com
   *Admitted Pro Hac Vice*
   – AND–
   WHITE & CASE LLP
   James N. Robinson
   Florida Bar No. 608858
   Mahalia A. Cole
   Florida Bar No. 98913
   200 South Biscayne Boulevard, Suite 4900
   Miami, FL 33131-2352
   Telephone: (305) 371-2700
   Facsimile: (305) 358-5744
   Email: jrobinson@whitecase.com
   Email: mahalia.cole@whitecase.com

   ***Counsel for Western Alliance Bank***

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of SANTA CLARA

On 4/4/19 before me, AVELINA M SIMPLICIANO, NOTARY PUBLIC
(Here insert name and title of the officer)

personally appeared LORI EDWARDS,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature     (Notary Public Seal)

A. M. SIMPLICIANO
COMM. # 2271010
NOTARY PUBLIC • CALIFORNIA
SANTA CLARA COUNTY
Comm. Exp. JAN. 11, 2023

---

**ADDITIONAL OPTIONAL INFORMATION**

DESCRIPTION OF THE ATTACHED DOCUMENT

US DISTRICT COURT
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages 3   Document Date 4/4/19

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual(s)
- ☐ Corporate Officer
  _____ (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

**INSTRUCTIONS FOR COMPLETING THIS FORM**
This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this 29th day of April, 2019, on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *James N. Robinson*
James N. Robinson

## SERVICE LIST

### **ALL RECIPIENTS WERE SERVED VIA CM/ECF

| **SECURITIES AND EXCHANGE COMMISSION** <br> Miami Regional Office <br> 801 Brickell Avenue, Suite 1800 <br> Miami, Florida 33131 <br> Robert K. Levenson <br> Chris Martin <br> Senior Trial Counsel <br> levensonr@sec.gov <br> martinc@sec.gov <br> Telephone: 305.982.6300 <br> Facsimile: 305.536.4154 | **MARCUS NEIMAN & RASHBAUM LLP** <br> 2 South Biscayne Boulevard <br> Suite 1750 <br> Miami, Florida 33131 <br> Jeff Marcus <br> jmarcus@mnrlawfirm.com <br> Telephone: 305.400.4262 <br> *Attorneys for Defendant Carl Ruderman* |
|---|---|
| **GREENBERG TRAURIG, LLP** <br> 333 S.E. 2nd Ave., Suite 4400 <br> Miami, FL 33131 <br> Paul J. Keenan Jr. <br> keenanp@gtlaw.com <br> Telephone: 305.579.0500 <br> *Attorneys for Defendant 1 Global Capital, LLC and Relief Defendant 1 West Capital, LLC* | **NELSON MULLINS BROAD AND CASSEL** <br> One Biscayne Tower, 21st Floor <br> 2 S. Biscayne Boulevard <br> Miami, FL 33131 <br> Gary M. Freedman <br> gary.freedman@nelsonmullins.com <br> Dan Newman <br> dan.newman@nelsonmullins.com <br> Telephone: 305.373.9449 <br> *Attorneys for Receiver Jon A. Sale* |