**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-61991-BLOOM/Valle**

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

        Defendants, and

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH, LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC,
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

        Relief Defendants.
_____/

**ORDER ON PLAINTIFF'S MOTION TO LIFT REMAINING PORTION**
**OF ASSET FREEZE ON DEFENDANT CARL RUDERMAN'S CONDOMINIUM**

**THIS CAUSE** is before the Court on Plaintiff Securities and Exchange Commission's ("Plaintiff") Motion to Lift Remaining Portion of Asset Freeze on Defendant Carl Ruderman's Condominium, ECF No. [287] ("Motion"). Defendant Carl Ruderman ("Defendant") filed a Response, ECF No. [294] ("Response"), to which Plaintiff filed a Reply, ECF No. [295] ("Reply"). The Court has carefully reviewed the Motion, all related submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

I.  **BACKGROUND**

On August 23, 2018, Plaintiff filed a Complaint and an emergency *ex parte* motion seeking several forms of emergency relief and permanent relief, including a freeze over all of Defendant's assets. ECF Nos. [1], [7]. On the same date, the Court granted Plaintiff's emergency *ex parte* motion. ECF No. [13]. On September 19, 2018, Defendant agreed to the continuation of the asset freeze pending the final resolution of the case. ECF No. [72]. On August 13, 2019, the Court approved a settlement agreement and entered the Final Judgment against Defendant. ECF No. [225]. The Final Judgment lifted the asset freeze against Defendant with the exception of Defendant's condominium located at 20165 Northeast 39th Place, #TS-01, Aventura, Florida, 33180, Miami-Dade Office of the Property Appraiser Folio 28-1235-076-0450 ("Condominium"), which effectively prohibited creditors from bringing suit or placing liens on the Condominium. *Id.* at 10.

The Final Judgment allowed Defendant to sell the Condominium and pay 50 percent of the remaining equity to Plaintiff as restitution for 1 Global Capital investors. *See id.* at 7. To effectuate the sale, the Final Judgment set forth a framework that allowed Defendant to choose a realtor with Plaintiff's approval and that allowed the chosen realtor to have an exclusive six-month listing for the Condominium. *See id.* at 6. The listing price of the Condominium was to be subject to both Parties' approval. *See id.* The Final Judgment also required both Parties to accept offers for the Condominium together and resolve all disputes through a mediator or, after failing to resolve the dispute through a mediator, seek a ruling from the Court. *See id.* at 6-7.

According to the Motion, Defendant hired a realtor and executed an exclusive six-month listing agreement with the realtor. *See* ECF No. [287] at 4. The Parties agreed to an original listing price of $7.8 million, a revised listing price of $6.25 million, and three six-month extensions of

the listing agreement in February 2020, August 2020, and February 2021. *See id.* at 4-5. During that time, there was one viable offer to buy the Condominium for $5.325 million, but Defendant refused to accept the offer. *See id.* 5.

Plaintiff now requests that the Court lift the asset freeze over the Condominium. *See* ECF No. [287]. Plaintiff's argument is premised on the contention that under the current framework to sell the Condominium jointly, the Parties are unlikely to sell the Condominium at a price that will provide a meaningful restitution for the investors. *See id.* at 5. Defendant argues that the Condominium could sell at or near the fair market value under the current framework and provide a meaningful restitution for the investors. ECF No. [294] at 2.

## II. LEGAL STANDARD

The Eleventh Circuit has determined that a district court may exercise its full range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award. *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Co.*, 51 F.3d 982, 987 (11th Cir. 1995).

## III. DISCUSSION

Plaintiff requests that the Court lift the asset freeze on Defendant's Condominium pursuant to the Court's equitable powers. To that end, Plaintiff provided significant evidence that Defendant misappropriated more than $32 million of investor funds, ECF Nos. [64-1] to [64-34], and that Defendant obstructed Plaintiff's efforts to find the misappropriated investor funds, ECF Nos. [8-6] at 113-14; [8-8] at 141. While Defendant agreed to sell the Condominium and pay 50 percent of the equity as restitution, *see* ECF No. [225] at 7, the amount required to satisfy the mortgage, interest, late fees, and attorneys' fees has increased from $4 million to nearly $5 million while the Parties attempted to sell the Condominium, *see* ECF No. [287] at 5. The additional closing costs

and the realtor's commission increase the total costs to at least $5.4 million. ECF No. [295] at 3. Furthermore, according to Plaintiff, JPMorgan, the bank that holds the mortgage, may impose additional costs as a result of a clawback action that the Court-appointed Receiver brought against JPMorgan to recover $1.05 million of investor funds that Defendant used to help pay for the mortgage. *See* ECF No. [295] at 3-4. JPMorgan has stated its intention to recoup, from the sale of the Condominium, any amount that it must pay to the Receiver. *See id.* Meanwhile, the only viable offer for the Condominium in the past two years was an offer for $5.325 million, and the Parties failed to agree on a viable counteroffer under the current framework before the negotiations broke down. *Id.* at 2; *see also* ECF No. 294 [4-5]. Given the circumstances, the Court determines that it unlikely that the Condominium will be sold within a reasonable timeframe and at a price high enough to yield a meaningful restitution for the investors under the current framework, and that maintaining the asset freeze will only allow Defendant to reside in the Condominium paid through misappropriated investor funds. Accordingly, the balance of equities favors lifting the asset freeze.

Defendant raises several arguments in response. First, Defendant argues that a joint sale of the Condominium will benefit the investors by providing a greater restitution and that discontinuing the joint sale will not yield a benefit for the investors. *See* ECF No. [294] at 6-7. As indicated above, however, the Court is not persuaded that pursuing a joint sale of the Condominium will benefit the investors. Considering the realtor's opinion that the Condominium will almost certainly not be sold at the revised listing price, *see* ECF No. [295] at 3, and the Parties' inability to agree on a modified listing price or make viable counteroffers under the current framework, *see* ECF Nos. [295] at 3, [294] at 4-5, maintaining the asset freeze will merely frustrate future attempts to sell the Condominium, cause delays that will further increase the costs and fees, and reduce any restitution for the investors. As such, contrary to Defendant's contention that discontinuing the

joint sale will not yield a benefit for the investors, it is apparent that discontinuing the joint sale will curtail the mounting costs and fees that continue to reduce the restitution for the investors.

Next, Defendant argues that Plaintiff does not have a legal basis to ask the Court to modify the asset freeze because Plaintiff fails to set out the proper justifications for modifying the Final Judgment under Rule 60. ECF No. [294] at 7-8. Defendant's argument is unavailing for several reasons. First, Rule 60 governs changes to final judgments, not a motion to modify an asset freeze order that the Court granted before the Final Judgment. *See* Fed. R. Civ. P. 60. The Court may exercise its full range of equitable powers to set or lift an asset freeze. *See FTC*, 748 F.2d at 1433-34 (finding that a district court may exercise its full range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award). Second, by the terms of the asset freeze order, the Court expressly retained jurisdiction over this matter and over Defendant "in order to implement and carry out the terms of all Orders and Decrees that may be entered and/or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court." ECF No. [13] at 6-7. Therefore, the asset freeze is subject to further Court order, and Plaintiff is not required to set out the appropriate grounds under Rule 60.

In addition, it should be noted that Defendant consented to the Final Judgment. ECF No. [225] at 1. As such, even if the Court's equitable powers did not apply or the Court did not expressly retain jurisdiction and authority to modify the asset freeze, the standards for the modification of consent decrees would govern the instant action. The Eleventh Circuit has determined that the district court may modify a consent decree if the movant shows that: (1) there has been "a significant change either in factual conditions or in law[;]" and (2) "the proposed modification is suitably tailored to the changed circumstances." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1033 (11th Cir. 2002) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384,

391 (1992)). As indicated above, Plaintiff has demonstrated that the failure to sell the Condominium for two years and the mounting costs constitute a significant change in the factual conditions. Moreover, the proposed modification of lifting the asset freeze will curtail additional fees and costs from further reducing the restitution for the investors. *See* ECF Nos. [287] at 5, [295] at 4. As such, Plaintiff does have a legal basis to ask the Court to lift the asset freeze.

Third, Defendant argues, assuming the Court declines to lift the asset freeze, that the current framework for the joint sale of the Condominium should remain in place because the hired realtor is highly experienced. Because the Court determines that the asset freeze should be lifted and that the current framework for the joint sale of the Condominium is ineffective, the Court foregoes consideration of Defendant's final argument.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion, **ECF No. [287]**, is **GRANTED**.

(2) The asset freeze that this Court previously imposed against Defendant Carl Ruderman's Condominium, *see* ECF Nos. [13] & [74], is vacated, lifted, and extinguished in all respects.

(3) The Court's Order Granting *Ex Parte* Motion for Appointment of a Receiver, ECF No. [12], is expanded to include the Condominium.

(4) Receiver Jon A. Sale shall have the same authorization and direction with respect to the Condominium as the other entities under the Receivership.

Case No. 18-cv-61991-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 28, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record