UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-cv-61991-BB

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

1 GLOBAL CAPITAL LLC, and
CARL RUDERMAN,

    Defendants, and

1 WEST CAPITAL LLC,
BRIGHT SMILE FINANCING, LLC,
BRR BLOCK INC.,
DIGI SOUTH LLC,
GANADOR ENTERPRISES, LLC,
MEDIA PAY LLC
PAY NOW DIRECT LLC, and
RUDERMAN FAMILY TRUST,

    Relief Defendants.
_____/

## RECEIVER'S EIGHTH STATUS REPORT

Jon A. Sale, not individually, but solely in his capacity as the Court-appointed receiver (the "Receiver") for Bright Smile Financing, LLC ("Bright Smile"); BRR Block Inc. ("BRR Block"); Digi South LLC ("Digi South"); Ganador Enterprises, LLC ("Ganador"); Media Pay LLC ("Media Pay"); Pay Now Direct LLC ("Pay Now"); the Ruderman Family Trust; and the Bright Smile Trust (collectively, the "Receivership Entities"), respectfully submits this Eighth Status Report covering the period of April 14, 2021 through February 28, 2022 ("Reporting Period").

1

## I.   INTRODUCTION

The Receiver and his retained professionals achieved significant results for the benefit of the Receivership Estate during the Reporting Period by: (1) negotiating, litigating, and settling clawback (fraudulent transfer) claims against several third-parties; and (2) attending to general maintenance of the Receivership.

## II.   RECEIVER'S APPOINTMENT AND DUTIES

On August 23, 2018, the United States Securities & Exchange Commission ("SEC") initiated this action against Defendants 1 Global Capital, LLC ("1 Global") and Carl Ruderman, and Relief Defendants 1 West Capital LLC ("1 West"), Bright Smile, BRR Block, Ganador, Media Pay, Pay Now, and the Ruderman Family Trust. [D.E. 1]. The SEC alleges that Defendants engaged in a four-year long unregistered securities fraud totaling more than $287 million, victimizing thousands of investors nationwide. *Id.*, ¶ 1. The SEC seeks, among other relief, permanent injunctive relief, civil penalties, and disgorgement. *Id.*, pp. 33-34. The same day, the SEC requested an asset freeze and the appointment of a receiver over Relief Defendants Bright Smile, BRR Block, Digi South, Ganador, Media Pay, and Pay Now. [D.E. 6; D.E. 7]. The Court entered a sealed order appointing Jon A. Sale, Esq. as Receiver for the Receivership Entities (the "Receivership Order").[1] [D.E. 12]. The Court also entered an order freezing Defendants' assets (the "Freeze Order"). [D.E. 13].

Pursuant to the Receivership Order, the Receiver is obligated to, among other things: (1) take immediate possession of the Receivership Entities' property, assets, and estates of every kind;

---

[1] The Court later expanded the Receivership over the Ruderman Family Trust and the Bright Smile Trust, on November 21, 2018, and the Receivership Order is controlling over them as well. [D.E. 115.]

and (2) investigate the way the affairs of the Receivership Entities were conducted and institute actions and proceedings for the benefit of investors and other creditors. [D.E. 12, ¶¶ 1-2].

The Receivership Order requires the Receiver to prepare status reports. [D.E. 12, ¶ 3]. This Eighth Report summarizes the Receiver's and his professionals' relevant activities during the Reporting Period.

### III. ACTIVITY DURING REPORTING PERIOD

On April 14, 2021, the Receiver filed his Seventh Status Report with this Court, which covered the period of August 21, 2020 through April 13, 2021. [D.E. 280]. In it, the Receiver explained the results he and his team of retained professionals achieved in connection with, among other things: (1) litigating and settling certain clawback actions; and (2) attending to general maintenance of the Receivership. *Id*.

In this Eighth Status Report, the Receiver addresses similar issues, including the updated status of clawback negotiations and litigations.

**A. Pending Litigation**

1. Original Seven Lawsuits

As previously reported, on August 23, 2019, Damian & Valori LLP ("Special Counsel"), the Receiver's contingency counsel, filed seven lawsuits against defendants that received funds from the Receivership Entities (the "Clawback Actions"), including: (1) Bank of America, N.A.; (2) J.P. Morgan Chase Bank, N.A. ("Chase"), for recovery of credit card payments; (3) Chase, for recovery of mortgage payments; (4) Citibank, N.A.; (5) Mercedes Benz Financial Services, USA, LLC ("Mercedes Benz"); (6) American Express Company ("AmEx"); and (7) Ferrari Financial Services Inc. ("Ferrari").

As previously reported, the Court had approved the Receiver's settlements with five of these entities: (1) Citibank, N.A. [D.E. 246] (resulting in a greater than 60% recovery for the Receivership); (2) Bank of America, N.A. [D.E. 248] (resulting in a 55% recovery for the Receivership); (3) Chase related to credit card payments [D.E. 250] (resulting in a 59% recovery for the Receivership); (4) AmEx [D.E. 270] (resulting in a 78% recovery of funds transferred to and retained by AmEx); and (5) Mercedes Benz [D.E. 269] (resulting in a 52% recovery for the Receivership). The Receiver has obtained settlement funds from all five of these entities.

In this Reporting Period, the Receiver settled two more Clawback Actions with Ferrari [D.E. 281] and with Chase related to mortgage payments [D.E. 299]. The Court approved the Receiver's settlement with Ferrari on May 12, 2021. [D.E. 282] (resulting in a 33% recovery for the Receivership). The Receiver has since obtained settlement payment from Ferrari. The Court approved the Receiver's settlement with Chase related to mortgage payments on February 11, 2022. [D.E. 301] (resulting in recovery of $300,000 for the benefit of the Receivership Estate and approximately $215,000 benefit for investors as discussed herein). The Receiver has since obtained the benefits of that settlement, as well. The settlement of the Receiver's lawsuit against Chase and the sale of Ruderman's condominium, are discussed further below.

2. <u>Additional Settlements</u>

The Receiver previously reported that he obtained Court-approval of settlements with two additional clawback entities for which no lawsuit was ever filed: (1) a law firm, which received payments made from Digi South, LLC, for a settlement amount of $105,000 [D.E. 277] (resulting in more than a 40% recovery); and (2) Bella Vista Mid-Rise North Condo. Association ("Bella Vista"), for monies paid to it in connection with condominium fees for Defendant Carl Ruderman's

4

residence, for a settlement amount of $62,500 [D.E. 279] (resulting in more than 46% recovery). The Receiver has now obtained full settlement payment from both the law firm and Bella Vista.

### 3. Lawsuit Against Jumbleberry

As previously reported, on February 19, 2020, the Receiver filed a clawback lawsuit against Jumbleberry, a Canadian entity. [Jumbleberry Docket, D.E. 1] (hereafter cited as "[JB D.E.]"). The parties engaged in substantial motion practice regarding Jumbleberry's motion to dismiss the Receiver's action, including objections to Magistrate Torres report and recommendation ("R&R") on the motion to dismiss. [*See* JB D.E. 13, 29, 39-41, 45].

The parties spent considerable time and effort between April and October 2021 litigating and discussing potential settlement of the lawsuit. The parties reached agreement on a proposed settlement in October 2021. On October 6, 2021, the Receiver filed a motion for approval of the proposed settlement agreement with Jumbleberry. [D.E. 292]. Pursuant to the terms of the proposed settlement, the Receiver would receive $87,640.00 from Jumbleberry and the parties agreed to execute mutual general releases. *Id.* The Court approved the settlement with Jumbleberry the same day, October 6, 2021. [D.E. 293] (providing for a greater than 100% recovery of funds transferred to and retained by Jumbleberry as profits).

### 4. Lawsuit Against Valentina Radchuk

As previously reported, on August 14, 2020, the Receiver filed a clawback lawsuit against Valentina Radchuk. *See* Case No. 20-cv-23396, Southern District of Florida ("Radchuk Action"). The Receiver was engaged in settlement discussion with Ms. Radchuk's counsel but learned in August 2020 that her counsel was no longer representing her. After several unsuccessful attempts to contact Ms. Radchuk to discuss settlement or the extension of the tolling agreement concerning claims against her, the Receiver filed suit.

On September 25, 2020, the Receiver obtained a default as to this defendant for failure to answer the complaint as required by law. [Radchuk Action, D.E. 8]. On November 17, 2021, the Receiver filed a motion for default judgment against Radchuk, which remains pending. [Radchuk Action, D.E. 14]. On March 28, 2022, the Court entered default judgment against Radchuk in the amount of $438,730.13. [Radchuk, D.E. 15].

     5.   Lawsuit against Nutra Specialists, Inc.

On February 18, 2021, the Receiver filed a clawback lawsuit against Nutra Specialists, Inc. ("Nutra") for fraudulent transfers in the amount of $617,862. *See* Case No. 21-cv-80356, Southern District of Florida ("Nutra Action"). On July 2, 2021, after briefing on a motion to dismiss, the Receiver obtained leave of Court to file his First Amended Complaint against Nutra. [Nutra Action, D.E. 34, 35]. At the same time, Special Counsel took over the litigation on behalf of the Receiver. The Receiver's First Amended Complaint added Dean Wayne and Blake Ruderman as defendants in the Nutra Action. *Id.*

On August 25, 2021, the parties attended mediation with mediator David Lichter, Esq. After a full day of mediation, the parties reached a conditional settlement in principle of the Nutra Action subject to execution of a final settlement agreement and the provision of financial affidavits to the Receiver by Nutra's principal, Mr. Wayne. The mediator filed his Report with the Court on August 27, 2021. [Nutra Action, D.E. 43].

Since the mediation, the Defendants have refused to satisfy conditions required to finalize the settlement, including Mr. Wayne's provision of financial affidavits. On February 22, 2022, counsel for the Defendants withdrew from the Nutra Action. [Nutra Action, D.E. 46]. The Court granted defense counsel's withdrawal and stayed the case through March 15, 2022, giving Defendants time to obtain new counsel. [Nutra Action, D.E. 47]. Nutra and Mr. Wayne obtained

6

new counsel, but Blake Ruderman has not. Special Counsel is in discussions with new counsel to determine whether a settlement can be finalized, but at this juncture, the Receiver is uncertain whether settlement will be finalized, or litigation will continue.

### 6. Remaining Potential Litigation

Rather than initiating litigation, when able the Receiver has entered into tolling agreements to provide the parties the opportunity to further investigate and discuss a consensual resolution of potential claims relating to subject transfers received from the Receivership Entities (collectively the "Tolled Entities"). At this time, the Receiver's counsel is no longer engaged in settlement discussions with any known Tolled Entities and has instituted litigation against, or settled with, all known Tolled Entities.

### B. Claims Process and First Distribution

As previously reported, in or about early August 2020, the Receiver made distribution payments to approved claimants. There remains one claimant who has failed to cash its distribution payment. The Receiver's counsel and paralegal spoke with the claimant and thereafter initiated a cancellation of the check to this claimant. The Receiver reissued a replacement check to this claimant. The Receiver anticipates making a second and final distribution to all claimants after closing out all clawback litigation.

### C. Ruderman Condominium

#### 1. Final Judgment and the Condominium

On August 23, 2018, the SEC filed a Complaint and emergency ex-parte motion seeking several forms of emergency and permanent relief, including a freeze of Ruderman's assets. [D.E. 1, 7]. On August 13, 2019, the Court approved a settlement agreement and entered a Final Judgment against Ruderman. [D.E. 225]. The final judgment lifted the asset freeze against

Ruderman with the exception of his condominium located at 20165 NE 39th Place, #TS-1, Aventura, Florida 33180 ("Condominium"). *Id.* The Final Judgment provided for the retention of a realtor, to be agreed upon between Ruderman and the SEC, to sell the Condominium. The Final Judgment also provided, in part, that "Ruderman shall further partially satisfy the Final Judgment by agreeing to disgorge to the Commission or its designee 50 percent of any equity remaining in the Condominium under terms set out in the Final Judgment." *Id.*

2. <u>Retention of Realtor and Expansion of Receivership Order</u>

Soon thereafter, Esslinger Wooten Maxwell, Inc. d/b/a BHHSEWM-Realty (the "Realtor") was retained under an exclusive listing agreement ("Realtor Agreement") for a period of six months. The Realtor Agreement was extended for additional six-month periods in February 2020, August 2020, and February 2021. On September 15, 2021 the SEC filed a Motion to Lift Remaining Portion of Asset Freeze on Defendant Carl Ruderman's Condominium. [D.E. 287]. By order dated October 28, 2021, [D.E. 296], the Court lifted the asset freeze previously imposed against Ruderman's Condominium and expanded the Receivership Order to include the Condominium, providing the Receiver the same authorization and direction with respect to the Condominium as all other assets and entities under Receivership.

3. <u>Contract and Amendments Thereto for Sale of Condominium</u>

On November 12, 2021, Ruderman and Giovanni LiDestri ("Buyer" or "LiDestri") entered into an "AS IS" Residential Contract For Sale And Purchase ("Real Estate Sale Contract") for the sale of the Condominium. The sale price set forth in the Real Estate Sale Contract was $5,500,000, and as explained below, was reduced by $75,000, for a total sale price of $5,425,000 ("Sale Price").

On November 30, 2021, Ruderman, LiDestri and the Receiver executed, subject to Court approval, an Amendment to Residential Contact For Sale and Purchase ("AS IS") Residential

8

Contract For Sale and Purchase ("Amendment"). Pursuant to the Amendment, Ruderman, the Receiver and LiDestri agreed to modify Section 20 of the Real Estate Sale Contract. Among other things, the Amendment: (i) provided that Svetlana Ruderman would join in the execution of any deed for the conveyance of the Condominium, as required in the Real Estate Sale Contract, for the sole purpose of conveying her Homestead rights, if any, in connection with the Condominium; (ii) clarified certain provisions relating to the payment of proceeds resulting from the sale of the Condominium including, but not limited to, a requirement that the net proceeds from the sale of the Ruderman Condominium be held in escrow by counsel for the buyer, Kara L. Stachel, Esq. ("Escrow Agent:"); and (iii) that the Real Estate Sale Contract and any amendments thereto had to be approved by this Court. The Amendment did not change the Sale Price in the Real Estate Sale Contract.

On December 11, 2021 the Ruderman, LiDestri, and the Receiver entered into Addendum No. 2 to Real Estate Sale Contract ("Second Amendment"). In accordance with the Second Amendment, the parties agreed to modify the Real Estate Sale Contract solely to the extent that the Sale Price was reduced $75,000.00 at closing, as mentioned above, as a credit for certain repairs—resulting in the Sale Price of $5,425,000. In addition, Ruderman agreed in the Second Amendment to pay $1,200 from any portion of proceeds he received to remediate termite issues.

4. Court Approval of Sale

On January 12, 2022, the Receiver, SEC, and Ruderman jointly sought Court approval of the sale of Ruderman's Condominium, pursuant to the Real Estate Contract, the First Amendment, and the Second Amendment. [D.E. 297]. The Receiver, SEC, and Ruderman all believed the Sale Price was fair and reasonable, and would allow for recovery of monies that could, in part, go

9

toward paying down disgorgement owed by Ruderman and benefit the Receivership Estate and approved claimants. *Id.*

The Court approved the sale of the Condominium on January 13, 2022. [D.E. 298]. The Court further ordered that the proceeds from the sale of the Condominium would be held in escrow by the Escrow Agent, pending further order of the Court. *Id.*

  5. Court Approval of Settlement with Chase

Chase was the holder of a promissory note ("Note") and mortgage ("Mortgage") on the Condominium, which it was assigned by the Federal Deposit Insurance Corporation (the "FDIC") acting in its receivership capacity for Washington Mutual Bank f/k/a Washington Mutual Bank FA ("WAMU"). As of February 2022, the total amount of $4,510,586.78 remained due and owing under the Note and the Mortgage. Chase represented and warranted that $4,510,586.78 was the payoff amount.

In connection with the Court-approved sale of the Condominium, the Receiver and Chase entered into a proposed settlement agreement concerning the Receiver's clawback claims for mortgage payments and the amounts due Chase under the Note and Mortgage. Pursuant to the terms of the proposed settlement: (a) Chase agreed to reduce the payoff amount of the Note and Mortgage by $300,000, which would inure to the benefit of the Receivership Estate; (b) the remaining net proceeds would be distributed in accordance with the Final Judgment; (c) the parties would enter into mutual releases on closing; and (d) if the closing did not occur by February 25, 2022, the proposed settlement agreement would be null and void.

On February 10, 2022, the Receiver, Chase, and Ruderman sought expedited approval of the proposed settlement agreement, given the parties' need to ensure closing occurred before

February 25. [D.E. 299]. On February 11, 2022, the Court approved the settlement agreement with Chase, [D.E. 301], clearing the way for closing of the sale of the Condominium.

### 6. Closing and Disbursement of Proceeds

The Court-approved sale of the Condominium was completed and closed on February 14 2022.

On February 18, 2022, the Receiver, SEC, and Ruderman filed a joint motion for disbursement of the proceeds held in escrow after closing,[2] as required by the Court. [D.E. 303]. The parties included the final closing statement as an exhibit to their joint motion. [D.E. 303-1]. As reflected in the closing statement, the total amount of proceeds held in escrow for disbursement, after payment of lien holders, closing costs, and other expenses, was $728,578.84. Of this amount: (a) $300,000 was to be disbursed to the Receiver pursuant to the settlement with Chase, [D.E. 303, ¶7]; and (b) Ruderman and the SEC would each receive $214,289.42 in accordance with the Final Judgment, [D.E. 303, ¶8].

The Court approved the disbursement of these funds, as requested in the joint motion, on February 18, 2022. [D.E. 304]. The Receiver received the $300,000 for the benefit of the Receivership on February 22, 2022.

---

[2] By way of order dated February 11, 2022, the Court had clarified that the "proceeds" held in escrow were the net proceeds available after the payment of all lien holders, including Chase's mortgage lien, liens, assessments, and applicable closing costs. [D.E. 302].

### IV. BANK ACCOUNTS

In connection with his duty to marshal the Receivership's assets, the Receiver opened Receivership bank accounts at BankUnited. The following is a list of bank accounts and their corresponding balances:[3]

| | |
|---|---|
| Jon Sale as Receiver for Bright Smile Financing, LLC | $ 456,115.07 |
| Jon Sale as Receiver for Ganador Enterprises LLC | $ 2,067,781.25 |
| Jon Sale as Receiver for BRR Block Inc. | $ 586,747.49 |
| Jon Sale as Receiver for Pay Now Direct LLC | $ 712,375.77 |
| Jon Sale as Receiver for Digi South LLC | $ 273,185.28 |
| **TOTAL** | **$4,096,204.86** |

### V. ASSET IDENTIFICATION

#### A. Bright Smile

As explained in the Receiver's prior reports, the Receiver sold Bright Smile's assets to Buyers, which sale was approved by the Court on February 20, 2019. The Receiver has investigated whether there are any additional claims or other sources of recovery available as it relates to Bright Smile. Currently, the Receiver does not believe there are any additional claims or other sources of recovery related to Bright Smile.

#### B. BRR Block

The Receiver has liquidated most of the Receivership's digital currency holdings, which were purchased using funds from BRR Block. The Receiver retained a digital currency consultant to assist with the liquidation, as approved by the Court on October 15, 2019 [D.E. 240]. The Receiver is determining whether it is possible to liquidate the remaining crypto currencies, last valued at approximately $15,000-$20,000.

---

[3] The account balances are as of the afternoon of March 23, 2022.

### C. Digi South

As explained in prior reports, the Receiver's professionals investigated Digi South to identify possible sources of recovery for the benefit of the Receivership Estate. The Receiver obtained tolling agreements from several entities that received transfers from Digi South, which are included within the Tolled Entities. The Receiver has settled all known litigation related to Digi South. Currently, the Receiver does not believe there are any additional claims or other sources of recovery related to Digi South.

### D. Media Pay

The Receiver's professionals investigated Media Pay and reviewed related documents to locate possible sources of recovery for the benefit of the Receivership Estate. The Receiver's lawsuit against Nutra, filed on February 18, 2021, is for recovery of fraudulent transfers the Receiver contends were made by Media Pay. Currently, the Receiver does not believe there are any additional claims or other sources of recovery related to Media Pay.

### E. Pay Now

As explained in the Receiver's prior reports, there are no remaining assets related to Pay Now. Pay Now never had any business operations and was only used to pay Defendant Ruderman's personal and family expenses including his mortgage and condominium related fees. Pay Now had a bank account at Bank of America, which was closed in early August 2018 before the Receiver's appointment. The bank account contained approximately $2,348.00, which funds were remitted by 1 Global representatives to the Receiver after the Receiver's appointment. The cash was transferred to a Receivership bank account.

The Receiver has settled or concluded all known litigation related to Pay Now. Currently, the Receiver does not believe there are any additional claims or other sources of recovery related to Pay Now.

### F. The Ruderman Family Trust and Bright Smile Trust

The Receiver's professionals investigated the Ruderman Family Trust and Bright Smile Trust and reviewed related documents to locate other possible sources of recovery for the benefit of the Receivership Estate. Currently, the Receiver does not believe there are any additional claims or other sources of recovery.

### VI.   FEES AND COSTS

The Receiver and his team are especially cognizant of the impact their professional fees have on the return of monies to defrauded investors. The Receiver and his team have worked diligently through complex issues to maximize recoveries while billing at substantially discounted rates. In addition, the Receiver has sought to work collaboratively with the SEC and 1 Global in sharing information, identifying recovery sources and targets, and reducing duplication of efforts. Thus far, the Receiver has utilized his and his team's collective experience to avoid costly litigation while also securing significant cash recoveries. In certain instances where litigation has become necessary, the Receiver has obtained counsel to pursue those claims under a contingency fee agreement, where such counsel only receives payment for fees if there is a recovery to the Receivership Estate.

### CONCLUSION

The foregoing is a summary of the Receiver's and his retained professionals' activities during the Reporting Period. Further information is available upon request. The Receiver will be filing additional reports with the Court on a quarterly basis, as required by the Receivership Order.

Dated: April 18, 2022.          NELSON MULLINS BROAD AND CASSEL

Attorneys for Receiver
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, FL 33131
Telephone: 305.373.9400
Facsimile: 305.995.6449

By:   s/Daniel S. Newman
      Daniel S. Newman
      Florida Bar No. 0962767
      Gary Freedman
      Florida Bar No. 727260
      Christopher Cavallo
      Florida Bar No. 0092305

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

                        s/Daniel S. Newman
                        Daniel Newman

## SERVICE LIST

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**<br>Miami Regional Office<br>801 Brickell Avenue, Suite 1800<br>Miami, Florida  33131<br>Robert K. Levenson<br>Chris Martin<br>Senior Trial Counsel<br>levensonr@sec.gov<br>martinc@sec.gov<br>Telephone: 305.982.6300<br>Facsimile: 305.536.4154 | **MARCUS NEIMAN & RASHBAUM LLP**<br>2 South Biscayne Boulevard<br>Suite 1750<br>Miami, Florida 33131<br>Jeff Marcus<br>jmarcus@mnrlawfirm.com<br>Telephone: 305.400.4262<br>*Attorneys for Defendant Carl Ruderman* |
| **GREENBERG TRAURIG, LLP**<br>333 S.E. 2nd Ave., Suite 4400<br>Miami, FL 33131<br>Paul J. Keenan Jr.<br>keenanp@gtlaw.com<br>Telephone: 305.579.0500<br>*Attorneys for Defendant 1 Global Capital, LLC and Relief Defendant 1 West Capital, LLC* | |